IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**MONTREECE KINDLE,**

            **Petitioner,**

      v.

**UNITED STATES OF AMERICA,**

            **Respondent.**

**Case No. 13 C 9245**

**Judge Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Petitioner Montreece Kindle's ("Kindle") Motion to Vacate, Set Aside, or Correct Sentence [ECF No. 1] is denied.

### I. BACKGROUND

On September 8, 2009, Kindle was charged in an indictment with four offenses: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count One); (2) attempted possession with intent to distribute five kilograms or more of cocaine (Count Two); (3) possession of a firearm in furtherance of a drug trafficking crime (Count Three); and (4) possession of a firearm after having been convicted of a felony (Count Five). (No. 9 CR 687, ECF No. 18.) The facts of this case are summarized in *United States v. Mayfield,* 771 F.3d 417 (7th Cir. 2014), and briefly restated here.

This case arises from a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sting operation in which Kindle and his co-conspirators — Leslie Mayfield, Nathan Ward, and Dwayne White — planned and ultimately convened to carry out what they believed to be a stash house robbery.  Mayfield, who had been recruited by a confidential informant ("CI"), Jeffrey Potts, was to assemble a crew, gather weapons, and help a disgruntled drug courier carry out the robbery.  The drug courier was actually an undercover special agent, Dave Gomez.

According to the evidence presented at trial, on August 9, 2009, Mayfield, Kindle, Ward, and an individual known as "New York" met with Gomez to discuss the robbery.  At the meeting, Kindle actively participated in the conversation.  For instance, he asked Gomez questions about how long he would stay in the stash house, how many people would be in the stash house, and if the person answering the stash house door would be armed.  At the end of the conversation, Kindle indicated that the plan was not too much for him to handle.  The robbery was scheduled for the following day.

On August 10, 2009, Kindle, Ward, White, and Mayfield met with Gomez, who led them to a storage facility.  After confirming that the men were "good" for the robbery, Gomez gave the arrest signal, and Kindle and the rest of his crew were taken into custody.  The van in which Kindle, Ward, and White traveled to the

storage facility contained weapons, ski masks, bullet-proof vests, latex gloves, and a large duffle bag. Following his arrest, Kindle confessed to his role in the scheme.

Before trial, the Government presented a motion *in limine* to preclude Defendants from presenting an entrapment defense. Only Mayfield filed a response, accompanied by a six-page, handwritten "statement of fact." (No. 9 CR 687, ECF No. 69.) The Court granted the Government's motion over Mayfield's objection, (No. 9 CR 687, ECF No. 95), and subsequently denied Mayfield's motion for reconsideration.

After a three-day trial, a jury found Kindle guilty on all four counts of the indictment. (No. 9 CR 687, ECF No. 104.) Kindle and his co-defendants all appealed their convictions, challenging the sufficiency of the evidence presented against them. *See, United States v. Kindle*, 698 F.3d 401, 405–08 (2012), *vacated in part on reh'g en banc sub nom., Mayfield,* 771 F.3d 417. Mayfield also appealed the Court's decision to grant the Government's motion *in limine* precluding his entrapment defense. *Id.* at 408–09. The Seventh Circuit affirmed the convictions. *Id.* at 412.

Mayfield subsequently petitioned for rehearing *en banc* solely on the issue of the entrapment defense. Upon rehearing, the Seventh Circuit vacated its decision on Mayfield's entrapment defense, holding that Mayfield's pre-trial proffer was sufficient

to overcome the Government's motion *in limine*. *Mayfield,* 771 F.3d at 443. The Seventh Circuit indicated that it was reinstating the panel opinion to the extent that it resolved the appeals of Mayfield's co-defendants. *Id.* at 424 n.3.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that the sentence was imposed in violation of the Constitution or laws of the United States. To receive relief under § 2255, a prisoner must show a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979) (citation and internal quotations omitted). Alternatively, relief may be granted if a prisoner can show the trial court made "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 428 (1962). Relief under § 2255 is an "extraordinary remedy" because the petitioner "already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007).

## III. ANALYSIS

Kindle claims that he is entitled to relief under § 2255 for three reasons: (1) he received ineffective assistance of counsel, (2) his conviction was based on perjured testimony, and (3) his conviction was based on fabricated evidence because no stash house

or drugs actually existed. (ECF No. 1, at 5.) The Court begins with Kindle's second and third arguments, which were not raised in his direct appeal, and are therefore procedurally barred. *See, Wright v. United States,* 139 F.3d 551, 553 (7th Cir. 1998).

Even if the Court were to consider Kindle's arguments, it would find them to be without merit. Though recited in Kindle's Motion, neither argument is developed in Kindle's supporting memorandum. In three conclusory sentences, Kindle argues that he was denied due process because the Court "allowed perjured testimony by prosecution witness to serve as basis for conviction." (ECF No. 1, at 5.) Vague and conclusory arguments such as this do not entitle a petitioner to relief under § 2255. *See, Gray-Bey v. United States,* 156 F.3d 733, 739 (7th Cir. 1998) (explaining that § 2255 petition must be accompanied by a specific, detailed affidavit showing that petitioner has proof of allegations going beyond unsupported assertions); *see also, United States v. Irons,* 712 F.3d 1185, 1190 (7th Cir. 2013) (reiterating that underdeveloped arguments are waived); *overruled on other grounds by United States v. Taylor,* 778 F.3d 667 (7th Cir. 2015).

Kindle's third argument fares no better. As the Seventh Circuit has noted, "Though it might seem odd, the fact that the stash house, the drugs — indeed the whole plot — was fake is irrelevant. That the crime agreed upon was in fact impossible to commit is no defense to the crime of conspiracy." *United States*

*v. Corson,* 579 F.3d 804, 810 (7th Cir. 2009). Similarly, attempted possession may also occur even in situations "where there are no drugs to be had." *See, United States v. Weaver,* 8 F.3d 1240, 1243 (7th Cir. 1993). The Court therefore rejects Kindle's argument that his convictions were wrongly obtained through the use of fabricated evidence.

The Court now turns its attention to Kindle's ineffective assistance of counsel claim. To prevail on a claim for ineffective assistance of counsel, a petitioner must show that: "(1) counsel's performance was deficient, meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms' and (2) counsel's deficient performance prejudiced the petitioner, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Smith v. Brown,* 764 F.3d 790, 795 (7th Cir. 2014) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984)). The Court's review of an attorney's performance is highly deferential, and a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Koons v. United States,* 639 F.3d 348, 351 (7th Cir. 2011) (citation and internal quotations omitted).

Kindle claims that he received ineffective assistance of counsel because his attorney failed to present an entrapment

defense at trial. "To raise an entrapment defense, a defendant must show: (1) that he was induced by a government actor to commit the crime at issue; and (2) that he was not predisposed to commit that crime." *United States v. Hall,* 608 F.3d 340, 343 (7th Cir. 2010). The Seventh Circuit recently clarified that "inducement means government solicitation of the crime *plus* some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts." *Mayfield,* 771 F.3d at 434–35. In determining predisposition, the Court considers the following five factors:

> (1) the defendant's character or reputation; (2) whether the government initially suggested the criminal activity; (3) whether the defendant engaged in the criminal activity for profit; (4) whether the defendant evidenced a reluctance to commit the offense that was overcome by government persuasion; and (5) the nature of the inducement or persuasion by the government.

*United States v. Blassingame,* 197 F.3d 271, 281 (7th Cir. 1999). In the predisposition analysis, a defendant's reluctance to commit the crime "looms large." *Mayfield,* 771 F.3d at 437.

Unlike Mayfield's counsel, Kindle's counsel made no proffer in response to the Government's motion *in limine* to preclude Defendants from raising an entrapment defense. The Court must therefore determine whether counsel's failure to do so fell below professional norms and resulted in prejudice to Kindle. As the Seventh Circuit has emphasized, a defendant's initial burden in

- 7 -

defeating such a motion is not great: "the defendant must produce some evidence from which a reasonable jury could find government inducement and lack of predisposition." *Id.* at 443.

Kindle has not shown that his counsel lacked "sound reason" in choosing not to present an entrapment defense, and he has not suggested any evidence supporting such a defense. Indeed, the factors the Court uses to assess predisposition appear to weigh against an entrapment defense. First, the Government did not initially approach Kindle about the scheme — Mayfield did. Second, Kindle participated in the scheme for profit — Gomez indicated that the 25 to 35 kilograms of cocaine stored in the stash house would be split five ways, and that everybody involved was "going to eat." Third, Kindle did not display any reluctance to commit the robbery. He asked Gomez numerous questions about the logistics of the proposed crime, indicated that a stash house robbery was not too much for him to handle, and arrived on August 10, 2009 armed and ready to go. Fourth, as to the nature of the Government's inducement, there is nothing extraordinary about an invitation to enter the drug trade on the "usual terms" — that is, to quickly acquire a large quantity of drugs and resell them for a significant profit. *Hall,* 608 F.3d at 344. Finally, as to Kindle's character or reputation, the Government contends that Kindle nodded his head in the affirmative when asked whether he had committed a similar robbery in the past. (*See,* No. 9 CR 687,

ECF No. 89, at 6.) The Government also notes that Kindle has prior convictions for possession of a controlled substance with intent to deliver and unlawful possession of a firearm. These convictions, however, carry only limited weight because they date back to the 1990s. *See, Mayfield,* 771 F.3d at 428.

The facts of Kindle's case are distinguishable from Mayfield's. The Seventh Circuit found that Mayfield's proffer contained sufficient evidence of both inducement and predisposition. As to inducement, the court observed that Potts, the CI who initially recruited Mayfield,

> targeted Mayfield at a moment of acute financial need and against a backdrop of prolonged difficulty finding permanent, family-supporting work, . . . appealed to Mayfield's friendship and camaraderie and to their common struggle as convicted felons trying to make a living, . . . gave Mayfield money in order to create a debt that he knew Mayfield would be unable to repay and then exploited that debt by alluding to his status as a member of the Gangster Disciples, . . . [and] pestered Mayfield over a substantial period of time.

*Mayfield,* 771 F.3d at 441. As to predisposition, the court noted that Mayfield repeatedly rejected Potts' entreaties, relenting only when Potts implied that the Gangster Disciples might retaliate against him if he failed to repay his debt. *Id.* at 442. Unlike Mayfield, Kindle has never indicated what evidence, if any, could have supported his own entrapment defense.

Kindle also fails to show that counsel's failure to present an entrapment defense resulted in prejudice. Indeed, counsel's decision not to present an entrapment defense prevented the

Government from exploring Kindle's criminal past and supposed indication that he had committed a stash house robbery before. Because Kindle has failed to show that his attorney's conduct fell below professional norms, or resulted in prejudice, the Court cannot conclude that Kindle received ineffective assistance of counsel.

## IV. <u>CONCLUSION</u>

Having found no grounds upon which to grant Kindle relief under § 2255, the Court denies his Motion to Vacate, Set Aside, or Correct his Sentence [ECF No. 1].

**IT IS SO ORDERED.**

                                                           Harry D. Leinenweber, Judge
                                                           United States District Court

Dated:5/29/2015